# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| B.T., | : | |
| | : | |
| Plaintiff, | : | Case No. 2:24-cv-04147 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | Magistrate Judge Elizabeth P. Deavers |
| G6 HOSPITALITY, LLC, G6 | : | |
| HOSPITALITY FRANCHISING, LLC, and | : | |
| and CHOICE HOTELS INTERNATIONAL, | : | |
| INC., | : | |
| Defendants. | : | |
| | : | |

## OPINION & ORDER

This matter comes before this Court on Defendant Choice Hotels International, Inc.'s ("Choice") motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) (ECF No. 13). For the reasons set forth below, this Court **DENIES** Defendant's motion (ECF No. 13) and **GRANTS** Plaintiff's request for leave to amend the Complaint to cure the deficiencies identified in its briefing. Plaintiff shall file an amended complaint **within thirty (30) days of entry of this Order**.

## I.    BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a) and the Child Abuse Victim's Rights Act ("CAVRA"), 18 U.S.C. § 2255. Plaintiff B.T., a California resident, alleges that she was trafficked for sex as a minor between approximately 2014 to 2015[1] at two hotel locations—the Motel 6 located at 5101 W Century Blvd, Inglewood, CA 90304 ("Inglewood Motel 6") and  the Rodeway Inn located at 607 5th St, San

---

[1] In her brief opposing Defendant's motion to dismiss, Plaintiff notes that Paragraph 55 of the Complaint "inadvertently" alleges that Plaintiff was trafficked "from approximately 2020-2022" and "requests . . . leave to correct this typographical error . . . ." (ECF No. 1 ¶ 17 n.1 (quoting ECF No. 1 ¶ 55)).

Bernardino, CA 92410 ("San Bernardino Rodeway Inn")—that were owned, supervised, managed, controlled, and/or operated by Defendants G6 Hospitality, LLC ("G6") and Choice Hotels International, Inc. ("Choice") respectively. (ECF No. 1 ¶¶ 4, 29, 34). Plaintiff alleges that, at these hotels, she was forced to engage in commercial sex with many men everyday under threats of physical and psychological abuse.  (*Id.* ¶¶ 5–6).

Plaintiff alleges Defendants profited from B.T.'s sex trafficking by renting rooms to Plaintiff's traffickers and from Wi-Fi data collected from the rooms. (*Id.* ¶ 106). She also alleges that "to save costs and continually reap millions of dollars in profits, Defendants generally failed to create, adopt, implement, and enforce company-wide policies and procedures regarding suspected incidents of human trafficking at the branded properties." (*Id.* ¶ 41).  According to B.T., each stay at the San Bernardino Rodeway Inn raised "several consistent red flags," that should have been obvious to staff, "including, but not limited to: Paying for stays in cash; Paying for extended stays on a day-by-day basis; Requesting a room away from other guests; Unusually large number of used condoms in the trash; Unusually large number of male visitors coming in and out of the room." (*See e.g.*, *id.* ¶ 67).  Plaintiff also alleges that on one occasion, "B.T. and her trafficker check[ed] out of their room late, and the front desk staff threatened to call the police because an unusually large number of used condoms and dirty linens were found in the room," but "the San Bernardino Rodeway Inn by Choice[] allowed B.T. and her traffickers to leave, and did not inquire about B.T.'s safety or involve law enforcement." (*Id.* ¶ 64). In addition, Plaintiff alleges that "there was constant foot traffic in and out of B.T.'s room"; that "[a]t all hours of the day and the night, the staff witnessed 'johns' – who were significantly older than B.T. – come into the main entrance and to B.T.'s room"; and that "loud sounds of abuse and B.T.'s screams for help could often be heard from the room."  (*Id.* ¶¶ 65–66). According to B.T., hotel staff would have witnessed "the

signs of B.T.'s deterioration brought on by the abuse perpetrated by her traffickers, including bruising and physical and verbal abuse occurring in public areas of the Defendants' properties as well as signs of malnutrition and poor health." (*Id.* ¶ 59).

Plaintiff now seeks to hold Defendants liable under the TVPRA and CAVRA. On November 11, 2024, Plaintiff filed this action. (ECF No. 1). On February 19, 2025, Choice moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim under Rule 12(b)(6). (ECF No. 13). Plaintiff opposed the motion (ECF No. 17), and Choice replied (ECF No. 18). This matter is now ripe for resolution.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a claim based on the lack of personal jurisdiction. When challenged, the plaintiff bears the burden of establishing personal jurisdiction over each defendant "independently." *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quotation omitted); *see also Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

District courts have three options for ruling on a motion to dismiss under Rule 12(b)(2): (1) they may "decide the motion upon the affidavits alone"; (2) they may "permit discovery in aid of deciding the motion"; or (3) they may "conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The method selected affects the burden of proof the plaintiff must bear to avoid dismissal. *Id*. Where, as here, the court considers only the parties' written submissions, "the plaintiff must make only a prima facie showing that personal jurisdiction exists." *Id*. If, on the other hand, the court permits discovery or holds an evidentiary hearing, then the plaintiff must show by a preponderance of

evidence that jurisdiction exists. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

Regardless of the method employed to rule on a motion to dismiss under Rule 12(b)(2), the plaintiff cannot "rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise[,] . . . specific facts showing the court has jurisdiction." *Id.* (quotation omitted). When ruling on a motion to dismiss without conducting an evidentiary hearing, courts must consider the pleadings and affidavits in the light most favorable to the nonmoving party. *Beydoun*, 768 F.3d at 504. Nevertheless, courts may accept as true uncontroverted factual assertions of the defendant, provided they are "consistent with the representations of the plaintiff." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997). In other words, a "plaintiff may not simply rest on the bare allegations of the complaint. But uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *see also Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F.Supp.2d 531, 538 (S.D. Ohio 2012) (Marbley, J.) ("In deciding a Rule 12(b)(2) motion, the Court construe[s] the facts in the light most favorable to the non-moving party and does not weigh the controverting assertions of the party seeking dismissal." (quotation omitted)).

A court may also dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). When ruling on a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.

3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). A court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. The Complaint should be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

### III.    LAW & ANALYSIS

### A.  Personal Jurisdiction and CAVRA Liability

As a threshold matter, Choice contends that this Court cannot exercise personal jurisdiction over it because, in Defendant's view, Plaintiff has failed to state a claim under CAVRA, which authorizes a Plaintiff to bring suit in any appropriate United States District Court.  *See* § 2255(a). Because Choice is located in Indiana and the properties in question are located in California, Choice asserts that absent a CAVRA claim, this Court has no personal jurisdiction over it and must dismiss the case.  (*See* ECF No. 13).   "To determine whether this Court possesses personal jurisdiction over the Defendant, this Court must first analyze whether Plaintiff has stated a CAVRA claim." *T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 790 (S.D. Ohio 2024).  The Child Abuse Victims Rights Act, 18 U.S.C. § 2255(a) ("CAVRA"), provides:

> Any person who, while a minor, was a victim of a violation of section ... 1591 [among others] ... and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

§ 2255(a).  At the outset, Choice argues that Plaintiff does not adequately plead that she was a minor at the time that she was trafficked through its properties. Not so. In her Complaint, Plaintiff

alleges that that "[a]t the time her trafficking began, Plaintiff had run away from Foster Care *at the age of 14 . . . .*" (ECF No. 1 ¶ 3 (emphasis added)); that she "met her trafficker when she was just fourteen (14) years old" (ECF No. 1 ¶ 50); and that "Plaintiff and her traffickers stayed at this [] Rodeway Inn by Choice between 2014 and 2015." (ECF No. 1 ¶ 63). Plaintiff further alleges that she "was a 'minor' pursuant to 18 U.S.C. § 2255(a) when she was trafficked." (*Id.* ¶ 170).

As this Court observed under similar circumstances, "a complaint 'must be read "as a whole," and all reasonable inferences must be drawn in the plaintiff's favor.'" *T.D.P.*, 725 F. Supp. 3d at 790 (quoting *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 446 (6th Cir. 2014), *as amended* (Dec. 11, 2014)). Reading the Complaint as a whole, it is reasonable to infer from Plaintiff's complaint that she was a minor at the time she was trafficked at Defendants' properties. *Id.*

Defendant next argues that the plain language of CAVRA requires Defendant itself to have violated § 1591, the portion of the TVPRA that creates criminal liability for those knowingly engaged in or knowingly benefitting from sex trafficking, or other criminal statutes of which Plaintiff alleges she was a victim. (*See* ECF No. 13 at 19).

This Court's analysis "begins and ends with the text of the statute." *T.D.P.*, 725 F. Supp. 3d at 791. The text of Section 2255 "does not specify against whom a lawsuit may be brought" and "provides no reason to believe that Congress intended to prohibit plaintiffs from suing beneficiaries of and participants in the many crimes enumerated in § 2255, so long as plaintiffs' claims comport with the traditional requirements of standing—injury in fact, causation, and redressability." *Id.* at 791–92.

Here, Plaintiff has sufficiently alleged that she was injured when she was trafficked in violation of § 1591 as a minor. Defendant's alleged participation in and benefit from a venture it

should have known was in violation of the TVPRA, discussed further below, is "surely enough to establish causation for purposes of a standing analysis," and "Plaintiff's harm is one a court can redress through damages." *Id.* Accordingly, this Court concludes that Plaintiff has pleaded sufficient allegations to survive a motion to dismiss on her CAVRA claim.

Because this Court concludes that Plaintiff has stated a CAVRA claim, which authorizes nationwide personal jurisdiction, this Court possesses personal jurisdiction over Defendants. This Court also **GRANTS** Plaintiff's request for leave to amend the complaint to correct any typographical errors with respect to dates.

## B. Direct Civil Liability under the TVPRA

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in several cases with many factual similarities to this one. *See T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 793 (S.D. Ohio 2024) (citing cases). The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim, is the standard for civil liability under the TVPRA set forth in 18 U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

As a preliminary matter, this Court has held in several cases that § 1595(a) can be a standalone claim, and civil defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")).  This Court likewise finds that Plaintiff's allegation that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss. (ECF No. 1 ¶ 27).

As the statutory text makes clear, Section 1595 creates two kinds of civil liability: perpetrator liability and beneficiary (or participant) liability. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552–53 (7th Cir. 2023). This Court analyzes Plaintiff's claims under both theories.

### *1.  Perpetrator Liability*

Having concluded that there are no jurisdictional impediments to adjudicating this case, and that Plaintiff has stated a claim under § 2255, this Court now considers whether Plaintiff has stated a claim under the civil liability component of the TVPRA, § 1595.  This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking

cases under the TVPRA in several cases with many factual similarities to this one. *See T.D.P.*, 725 F. Supp. 3d at 793 (citing cases).  The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

> (b) Whoever knowingly—
>
> > (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> >
> > (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
> >
> > knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim, is the standard for civil liability under the TVPRA set forth in 18 U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

As a preliminary matter, this Court has held in several cases that § 1595(a) can be a standalone claim, and civil defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the

amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")).  This Court likewise finds that Plaintiff's allegations that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss. (*See e.g.*, ECF No. 1 ¶¶ 24, 146, 158).   This Court analyzes Plaintiff's Section 1595 claims under both the perpetrator and beneficiary theories.

### 2.  *Perpetrator Liability*

"Section 1595 incorporates § 1591's criminal liability elements, which include actual knowledge, as opposed to constructive knowledge." *Doe v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3759761, at *6 (S.D. Ohio Aug. 12, 2024).  As laid out earlier, § 1591(a)(1) "imposes criminal sanctions on 'whoever knowingly' 'recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person' " with knowledge or reckless disregard of the fact that " 'means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act.'" *See Doe v. Best W. Int'l*, 2024 WL 3759761, at *6 (citation omitted). As a result, to satisfy § 1591(a)(1) in this context, "plaintiffs must allege defendants knowingly harbored or maintained a person 'with knowledge [or reckless disregard of the fact] that fraud or force would be used to cause her to engage in a commercial sex act.'" *Id.*

To allege a violation of § 1591(a)(2), Plaintiff must allege that Defendant "benefit[ted], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)," and that Defendant also knowingly or recklessly disregarded the fact that threats of force or coercion would be used to cause her to engage in a commercial sex act. *Id.*  Under § 1591, "participation in a venture" requires "knowingly assisting,

supporting, or facilitating a violation of subsection (a)(1)." § 1591(e)(4). This Court has noted that to be liable under § 1591(a)(2), a defendant must be aware of the venture's "true ends" and commit an "overt act" in furtherance "of the sex trafficking aspect of the venture." *M.A.*, 425 F. Supp. 3d at 969-70.

Choice contends that Plaintiff does not allege any facts demonstrating that Defendants knew she was being trafficked, that she was forced, threatened, or coerced, or that Defendants recklessly disregarded any such coercion. (ECF No. 13 at 6–12). Furthermore, it argues that the simple act of renting a room does not qualify as "harboring" or "maintaining" under § 1591(a)(1) or as an "overt act" in furtherance of sex trafficking, as required by § 1591(a)(2). (*Id.*)

With respect to § 1591(a)(1), this Court concludes that Plaintiff sufficiently alleges that "Defendant[] knowingly harbored or maintained her by alleging that Defendant[] continued to rent rooms to her trafficker while accepting payments to keep quiet and allow the trafficking the continue." *See Doe v. Best W. Int'l, Inc.*, 2024 WL 3759761, at *6. Specifically, Plaintiff alleges that "loud sounds of abuse and B.T.'s screams for help could often be heard from the room" and that, at one point, "the front desk staff threatened to call the police because an unusually large number of used condoms and dirty linens were found in the room," raises a reasonable inference that Choice knew, or at least recklessly disregarded, that the commercial sex activity was coercive. (ECF No. 1 ¶¶ 64 –66).

These allegations raise a reasonable inference that Choice knew, or at least recklessly disregarded, that the commercial sex activity was coercive. S*ee Doe v. Best W. Int'l*, 2024 WL 3759761, at *6 ("Plaintiff is entitled to the reasonable inference that Defendants knew, or at least recklessly disregarded, that the commercial sex activity was coercive, given the commonsense understanding that the relationship between a pimp and prostitute is so very often coercive. Such

an inference is particularly reasonable given that Plaintiff alleges she was indeed coerced, through threats and threats of force.").

Defendants' arguments with respect to § 1591(a)(2) miss the mark as well. *see Doe v. Best W. Int'l*, 2024 WL 3759761, at *6 ("Plaintiff is entitled to the reasonable inference that Defendants knew, or at least recklessly disregarded, that the commercial sex activity was coercive, given the commonsense understanding that the relationship between a pimp and prostitute is so very often coercive. Such an inference is particularly reasonable given that Plaintiff alleges she was indeed coerced, through threats and threats of force.").

Defendant's arguments with respect to § 1591(a)(2) miss the mark as well. As this Court previously concluded, "Defendant's room rentals, coupled with its acceptance of cash bribes to stay quiet, also constitute 'knowingly assisting, supporting, or facilitating a violation of subsection (a)(1),' § 1591(e)(4), such that it was participating in a venture with Plaintiff's trafficker." *Id.* Additionally, Plaintiff is entitled to the inference that, based on the circumstances, that Defendant had knowledge of the venture's "true ends," and as explained earlier, Plaintiff plausibly alleges that Defendants at least recklessly disregarded that the relationship between Plaintiff and her trafficker was a coercive one. (*See* ECF No. 1 ¶¶ 64–66).

Accordingly, Plaintiff has sufficiently stated a claim that Defendants are directly, civilly liable under a perpetrator theory of the TVPRA,

### 3. Beneficiary Liability

Having concluded that Plaintiff sufficiently alleges that Choice is liable under § 1595 as a perpetrator, this Court turns to Plaintiff's allegation that Choice is liable as a beneficiary under § 1595. In order to survive dismissal under the "beneficiary" theory of § 1595(a), a plaintiff must plead the following: (1) the person or entity must "knowingly benefit[ ], financially or by receiving

anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a).  "A plaintiff may satisfy these elements by showing that 'defendant's own acts, omissions, and state of mind establish each element.'" *See T.D.P.*, 725 F. Supp. 3d at 794 (S.D. Ohio 2024) (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021)).

### a.  *"Knowing Benefit"*

The "knowing benefit" element merely requires that Choice knowingly receive a financial benefit, not that Choice have actual knowledge of an illicit venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965;  *accord H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *see also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowing benefit element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding that the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach").

Because Plaintiff alleges that Choice rented rooms to her traffickers and benefited financially from those rentals (ECF No. 1 ¶ 106 –107), Plaintiff's allegations are enough to satisfy the element of "knowing benefit" under Section 1595(a).[2]

---

[2] Choice, moreover, does not appear to contest the sufficiency of Plaintiff's allegations to satisfy this element.

### b.  *"Participated in a venture"*

Plaintiff has also alleged sufficient facts to demonstrate Defendant's conduct constituted "participation in venture" under § 1595(a).  This Court has held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement."  *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) (holding that "the relevant 'venture'" under Section 1595 need not be 'specifically a sex trafficking venture'" and can be a "'commercial venture[]' like running or expanding a business."); *Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL 6682152, at *4 (same); *A.C.*, 2020 WL 3256261, at *6 (same). Further, participation in a venture under § 1595 does not require an "overt act." *See e.g., J.L.*, 521 F. Supp. 3d at 1062; *E.S. v. Best W. Int'l Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021); *M.A.*, 425 F. Supp. 3d at 968–69; *S.J.*, 473 F. Supp. 3d at 153–54; *Doe S.W.,* 2020 WL 1244192, *6; *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020).

Plaintiff here alleges that Choice "owns, supervises, manages, control, and/or operates" the San Bernardino Rodeway Inn, in which Plaintiff was trafficked. (ECF No. 1 ¶ 29). Plaintiff alleges that Choice likewise exercised day-to-day control over Choice's Rodeway Inn and its other brand hotels through myriad means including providing reservation platforms, providing training to

employees, providing customer review platforms, and implementing standardized rules of operation. (*Id.* ¶¶ 130–40).

As Plaintiff points out, these allegations are sufficient to show that Defendants were "involved in a business venture with the franchisee hotels, and both groups benefitted by renting rooms to traffickers despite having at least constructive knowledge of ongoing trafficking based on the totality of the circumstances." *See N.B. v. Red Roof Inns, Inc.*, No. 2:22-CV-3771, 2024 WL 1332386, at *5 (S.D. Ohio Mar. 28, 2024).

Resisting this conclusion, Choice counters that it was "the franchisor and Choice's franchisee (the hotel owner and operator) was at best an intermediary between the alleged sex traffickers and Choice." (ECF No. 13 at 15).

First, this Court addresses whether a franchisor-franchisee relationship between Defendant and the hotel operators is too attenuated to support Plaintiff's claim. This Court has previously concluded that a franchisor-franchisee relationship between defendants and the hotel operators is not too attenuated to support Plaintiff's claim. *See e.g., N.B.*, 2024 WL 1332386, at *4–5. In so doing, this Court has distinguished the Eleventh Circuit's decision, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), which this Court has analyzed several times before. *See e.g.*, *G.M. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 766, 778–79 (S.D. Ohio 2024). In *Doe #1*, the complaint included allegations that: (1) defendants licensed their brand to franchisees who paid royalties to the defendants and other fees based on a percentage of their room revenue; (2) defendants received a percentage of the revenue generated from the rooms in which trafficking occurred; (3) defendants "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at these hotels; (4) defendant franchisors investigated incidents of trafficking at the individual hotels and controlled

15

training related to spotting trafficking; and (5) read online reviews mentioning prostitution and crime occurring generally at the hotels where plaintiffs were trafficked. *Doe #1*, 21 F.4th at 726. On these facts—admittedly similar to the ones *sub judice*—the Eleventh Circuit concluded that plaintiffs failed to allege that "the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id*. at 726–27.

But "[k]ey to the court's reasoning" in *Doe #1* "was how the plaintiffs had chosen to define the alleged venture—specifically as a 'sex trafficking' venture." *G.G.*, 76 F.4th at 561-62 (emphasis added).  Here, Plaintiff alleges that Defendants were engaged in commercial business ventures at the property where Plaintiff was trafficked, in addition to the sex-trafficking ventures themselves. (*See* ECF No. 1 ¶ 29 ("Choice knowingly benefited, or received something of value, from its commercial business ventures . . ."); *id.* ¶ 157 ("This continuous trafficking resulted from Defendants' facilitation of trafficking at the subject Defendants' Hotels and Defendants' ongoing ventures with one another and with criminal traffickers at those Hotels.")). These allegations are sufficient to support a "commercial business" venture for purposes of TVPRA liability. *See N.B.*, 2024 WL 1332386, at *4–5.

In a similar vein, Choice's argument it that cannot be liable for participating in "typical responsibilities" is unavailing.  (ECF No. 13 at 15).  As explained above, however, the alleged venture "need not be 'specifically a sex trafficking venture.'" *G.G.*, 76 F.4th at 554. Instead, it can "be a business whose primary focus is not on sex trafficking." *Id*.  In *G.G.*, for example, plaintiffs alleged that the defendant, Salesforce, provided advice and software to Backpage, a now-defunct website that hosted advertisements posted by the minor plaintiff's street-level trafficker. *Id.* at 548. The Seventh Circuit concluded that the venture there "was Backpage's business itself, including

the 'growth,' 'expansion,' and profitability of that business." *Id*. at 554. Salesforce's relationship with Backpage certainly fell within the ambit of its "typical responsibilities," much like Choice's.

Choice's argument that "inaction or failure to prevent is insufficient to plead "participation in a venture" is similarly unpersuasive. (ECF No. 13 at 16). Plaintiff here does not allege mere observation coupled with a failure to intervene. This is not an attempt at bystander liability. Instead, she alleges that the Choice breached "a statutory obligation not to benefit financially or receive anything of value from a venture that they knew, or should have known, engaged in violating the TVPRA." (ECF No. 1 ¶ 161). Plaintiff further alleges that Choice: (1) profited from the rooms her traffickers rented and failed to implement trafficking prevention training programs; (2) collected room reservation, identification, payment, and sex trafficking website data from the trafficker's use of hotel Wi-Fi; and (3) had expansive control over hotel operator policies and operations but did not use that power to hold the franchisees accountable. (*Id*. ¶¶ 115–139). This Court finds that Plaintiff's allegations that Defendant profited, failed to implement policies, and maintained expansive control over the hotel operation standards meet § 1595's definition of "participation" in a venture. *See T.D.P*., 725 F. Supp. 3d at 797.

In sum, Plaintiff has plausibly alleged that "Defendant was involved in a business venture with the hotel operators, and both groups benefitted by renting rooms to traffickers despite having at least constructive knowledge of ongoing trafficking based on the totality of the circumstances." *G.M.*, 725 F. Supp. 3d at 779.

       *c.*   *"Knew or should have known" that the venture violated the TVPRA*

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Choice need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates that

constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)).

Choice argues that the Complaint "lacks any plausible allegations that Choice (a franchisor that is twice removed from the traffickers) knew or should have known of any trafficking of Plaintiff." (ECF No. 13 at 16). Additionally, it contends that allegations based on what hotel operators may have observed are insufficient to establish its "actual knowledge" of Plaintiff's trafficking. (*Id.* at 16–17 & n. 10). Plaintiff responds: (1) that there were signs of Plaintiff's trafficking that ought to have been obvious to hotel staff; (2) that Defendant and the hospitality industry more broadly, have long been aware of the prevalence of human trafficking at their properties; but (3) failed to take action regarding human trafficking. (*See* ECF No. 17 at 11–12).

Here, Plaintiff alleges that hotel staff witnessed the obvious signs of Plaintiff's trafficking including signs of abuse, "including bruising and physical and verbal abuse occurring in public areas of the Defendants' properties as well as signs of malnutrition and poor health." (ECF No. 1 ¶ 52). Plaintiff also alleges that her stays at Choice properties produced repeated "red flags," including payment in cash, extended stays paid for on a day-to-day basis, large numbers of male visitors, and audible signs of distress during conflict between Plaintiff and her traffickers. (*Id.* ¶¶ 62–69).

This Court has previously held that notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *M.A.*, 425 F. Supp. 3d at 968; *G.M.,* 725 F. Supp. 3d at 780. Seeing similar allegations in the case at hand, this Court reaches the same conclusion.

This Court is guided in its analysis by two cases that establish the spectrum on which civil liability under the TVPRA can be found. In *Ricchio v. McLean*, the plaintiff alleged that the hotel owner and the trafficker were working together in a sex trafficking scheme evidenced by a "high-five" while discussing "getting this thing going again," a past business relationship between the two, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [plaintiff's] obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Plaintiff alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id*. The First Circuit concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture and held that the plaintiff had sufficiently alleged claims under § 1595. *Id*. at 557.

Conversely, in *Lawson v. Rubin*, plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women who he then sexually assaulted and abused at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus had done further investigation following the incidents, it would not have uncovered any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at *13–14.

Plaintiff's allegations fall somewhere in between *Ricchio* and *Lawson*. This Court has previously concluded that many aspects of Plaintiff's experience, as described, above should have alerted staff to her trafficking, including excessive condoms, cash payments from her traffickers, and frequent male guests. *See M.A.*, 425 F. Supp. 3d at 967; *see also T.D.P., 725 F. Supp. 3d at 798; T.P.*, 2022 WL 17363234, at *8-9. Additionally, Plaintiff asserts that Choice had notice about

the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence (*id*. ¶¶ 86–91), and that, on one occasion, "B.T. and her trafficker check[ed] out of their room late, and the front desk staff threatened to call the police because an unusually large number of used condoms and dirty linens were found in the room." (*Id.* ¶ 64).

As this Court previously found, the "facts specific to Plaintiff's own sex trafficking, in combination with her allegations that Defendant was on notice about the prevalence of sex trafficking at its hotels yet continued to rent rooms to traffickers and failed to take adequate steps to train staff in order to prevent its occurrence, together support a conclusion that Defendant had constructive knowledge of the trafficking occurring at their hotels because they 'should have known' about the nature of the venture under the beneficiary theory's negligence standard. § 1595." *See T.D.P.*, 725 F. Supp. 3d at 799 (reaching same conclusion). Therefore, this Court finds that Plaintiff's allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving this Motion to Dismiss.[3]

Because Plaintiff's allegations meet the three-pronged requirement of 18 U.S.C. § 1595, Plaintiff has sufficiently stated a claim that Choice is directly, civilly liable under the TVPRA. *See M.A.*, 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections); *T.D.P.*, 725 F. Supp. 3d at 797–99 (same).

---

[3] Choice also states that the TVPRA does not provide for joint and several liability, and that this Court should dismiss the Complaint to the extent it seeks joint and several liability. (ECF No. 13 at 20 n.20). But "[g]iven that no Defendant has even been found liable in this case, it would be premature to preclude joint and several liability at this juncture." *Doe v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3759761, at *7 (S.D. Ohio Aug. 12, 2024).

**C.  Vicarious Liability**

A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing "to the defendant the acts, omissions, and state of mind of an agent of the defendant" through indirect or vicarious liability. *J.L.*, 521 F. Supp. 3d at 1060. The TVPRA, however, does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue apply common law to fill in the gaps. *See T.D.P.*, 725 F. Supp. 3d at 799 (citing cases). This Court has applied federal common law when considering vicarious liability allegations under the TVPRA. *Id.* at 799–800 ("[T]his Court will proceed under a federal common law analysis of the issue. This approach brings the analysis in line with the Sixth Circuit's approach to applying the federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments.").  Here, Choice argues that Plaintiff fails to plead properly vicarious liability under the TVPRA pursuant to agency and joint employer theories of liability.

*1.  Agency*

The Sixth Circuit relies on the Restatement of Agency when applying the federal common law of vicarious liability. *Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 586 (S.D. Ohio 2016). Agency is most commonly defined as the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). A defining element of agency "is the principal's right to control the agent's actions" such as "[t]he power to give interim instructions." *Id*. at cmt. f (1); *see also Savanna Group, Inc. v. Trynex, Inc.*, No. 10-C-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2012) (explaining that "[t]he power to give interim instruction" is an element that "distinguishes principals in agency relationship from those who

contract to receive services provided by persons who are not agents."). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus. Inc.*, 524 U.S. at 755–56 (1998) (quoting Restatement (Second) of Agency § 219(1) (1957)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model also does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker v. R & A Pizza, Inc.*, 804 F.Supp.2d 615, 623 (S.D. Ohio 2011) ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them."). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id*. (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)). To succeed under an agency theory, Plaintiff must show both: (1) that Defendant and its franchisees were in an agency relationship; and (2) that hotels or hotel staff are plausibly liable under § 1595(a).

B.T. here alleges that Defendant exercised day-to-day control over the franchise property at issue here. (ECF No. 1 at ¶¶ 130-140). Plaintiff argues that this includes requiring franchisees to, among other things: (1) use Choice's property management system; (2) use Choice's centralized reservation system; (3) submit to periodic inspections with threat of termination; (4) gather reservation, payment, and occupancy data through Choice's centralized system; (5) use approved Wi-Fi and security vendors; (6) comply with Choice's regulated room rental rates; (7) sharing profits; and (8) adhere to other brand standards and corporate policies with respect to ethics and safety. (*Id.*). "These allegations are sufficient to meet the pleading standards of Federal Rule of

Civil Procedure 8 to demonstrate Defendant's control over the franchisee properties for purposes of an agency relationship and vicarious liability." *G.M.*, 725 F. Supp. 3d at 783.

And Plaintiff alleges that the hotel franchisees themselves committed a wrong that can be imputed on Defendant. *See J.L. v. Best W. Int'l Inc.*, 521 F. Supp. 3d 1048, 1064-65 (D. Colo. 2021). This Court applies the three-pronged test established by 18 U.S.C. § 1595—and already used to assess Defendant's direct liability—to the hotel franchisees as well: (1) the person or entity must "knowingly benefit[ ], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a).

First, Plaintiff alleges that the franchisees rented rooms to traffickers and financially benefited from their trafficking ventures, therefore satisfying the first prong. (ECF No. 1 ¶ 29). Second, Plaintiff has alleged sufficient facts—that franchisee hotels, along with Defendant, benefited financially from renting rooms to traffickers and should have known trafficking was going on based on the totality of the circumstances—to meet § 1595's definition of "participation in a venture" in a commercial setting that profited from Plaintiff's sex trafficking. (*Id.*). Plaintiff alleged sufficient facts to demonstrate that employees at the hotel had constructive knowledge that she was being trafficked; specifically, that staff would have seen many red flags pointing toward trafficking and signs of Plaintiff's physical deterioration and abuse and even threatened to call the police at one point. (ECF No. 1 ¶¶ 64–67). Therefore, the beneficiary theory is satisfied with respect to Defendant's franchisees.

### 2.  *Joint Employer Liability*

Choice also argues that Plaintiff fails to state a vicarious liability claim under a joint employer theory.  (ECF No. 13 at 19).  Much like agency theory, whether two employers are a

joint employer also often turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed. App'x 587, 594 (6th Cir. 2009) (adopting the following test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.").

"While the factors this Court must consider when analyzing both agency and joint employer theories of vicarious liability are very similar, important among those to establish a joint employer theory of vicarious liability is the control exercised by the franchisor specific to employment policies." *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 804–05 (S.D. Ohio 2024) (quoting *B.D.G. v. Choice Hotels Intern., Inc.*, No. 2:22–zcv–3202, 2023 WL 5935646, at *10 (S.D. Ohio Sep. 12, 2023)).

Here, Plaintiff alleges that Defendant "promulgate[d] policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay, which together exert significant control over all employment decisions made at the individual hotel locations at which Plaintiff was trafficked."   (ECF No. 1 at ¶ 125).  These allegations are sufficient to meet the requirements to plead joint employment. *See A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 805 (S.D. Ohio 2024) ("[B]ecause Plaintiff alleges

that Defendant posts all hotel jobs on its website, controls employee training, and provides employee benefits, she has sufficiently pleaded a joint employer theory against Wyndham.").

## IV.    CONCLUSION

For the foregoing reasons, this Court **DENIES** Defendant's motion to dismiss (ECF No. 13) and **GRANTS** Plaintiff's request for leave to amend the Complaint to cure the deficiencies identified in its briefing.  Plaintiff shall file an amended complaint **within thirty (30) days of entry of this Order**.

**IT IS SO ORDERED**.

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

DATED: September 29, 2025