**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **B.T., *an individual*,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:24-cv-4147** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **G6 HOSPITALITY, LLC, *et al.*,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter comes before the Court on the Motion for Judgment on the Pleadings by Defendants G6 Hospitality, LLC and G6 Hospitality Property, LLC. (ECF No. 49). For the following reasons, that Motion is **DENIED**.

## I. BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and the Child Abuse Victim's Rights Act ("CAVRA"), 18 U.S.C. § 2255. Plaintiff B.T., is a resident of Riverside, California who initiated this suit in this district court on November 11, 2024. (Am. Compl., ECF No. 45 ¶ 26).[1] Proceeding anonymously, she brings this lawsuit against Defendants G6 Hospitality, LLC, G6 Hospitality Property, LLC (collectively, the "G6" Defendants), and Choice Hotels International, Inc. She alleges that she was the victim of sex trafficking at a Choice-branded hotel in San Bernardino, California between 2014 and 2015, and at a G6-branded Motel 6 in Inglewood, California during 2015 while she was a minor. (¶¶ 28, 30, 50, 62–63, 70–71). She alleges that she was forced to engage in commercial sex with many men at these hotels every day under threats of physical and psychological abuse. (¶¶ 5–6).

[1] All paragraph citations reference the Amended Complaint unless otherwise stated.

***B.T.'s allegations about the G6-branded Motel 6.*** B.T. raises a variety of allegations about her time at the G6-branded Motel 6. She alleges that her stay at raised repeated "red flags" which should have raised alarms given the hoteliers' industry knowledge. These red flags included cash payments, extended stays paid for on a day-to-day basis, reserving rooms away from guests, signs of illegal drug use, frequent linen-change requests, an unusually large number of condoms in the trash, an unusually large numbers of male visitors asking for B.T. and her traffickers at the front desk, visible signs of prior and private physical abuse, large numbers of male visitors coming to B.T.'s room, requests to not be disturbed, women wearing clothing inappropriate for the weather, loitering and soliciting on hotel grounds, and audible signs of abuse to staff and other rooms. (¶¶ 74, 77, 103, 105). Additionally, B.T. alleges that the G6 Defendants provided Wi-Fi to her traffickers at their hotels, and "profited from data collected each and every time B.T.'s traffickers and customers used [the] Wi-Fi to advertise and solicit B.T. for commercial sex." (¶¶ 106–07, 141–42, 147).

According to B.T., her traffickers "were very violent with her," and "loud sounds of abuse and B.T.'s screams for help could often be heard from the room." She claims that she would escort each "john" to her room, and staff would witness her leave her room "with a male significantly older than her and walk them to the entrance. Then, the staff would see B.T. meet another male and walk with him through the hotel lobby and up to her room. This cycle would repeat hundreds of times" and was "accessible to staff via footage from security cameras." She details the red flags of her abuse that should have put staff on notice, and explains that she was trafficked there continuously for three months. (¶¶ 72–76).

***B.T.'s allegations about the Choice-branded hotel.*** Many of B.T.'s allegations against Defendant Choice Hotels International, Inc. are similar to her allegations against the G6

Defendants—but not all are. While B.T. alleges that the hotel staff saw similar red flags of trafficking, (*e.g.*, ¶ 67), she also alleges that on one instance, the front desk staff "threatened to call the police because an unusually large number of used condoms and dirty linens were found in [B.T.'s] room," but they ultimately "allowed B.T. and her traffickers to leave, and did not inquire about B.T.'s safety or involve law enforcement." (¶ 64).

Now, she seeks to hold Defendants civilly liable for her alleged trafficking at their hotel, alleging that they knew or should have known she was being trafficked in violation of the TVPRA. (*E.g.*, ¶¶ 92–103, 105–06, 109). The G6 Defendants are two Delaware limited liability companies that each operate their principal place of business in Carrollton, Texas. (¶¶ 30–34). Plaintiff brings two causes of action against them: (1) violation of the TVPRA; and (2) violation of CAVRA. (¶¶ 38, 158–78).

This Court previously dismissed Defendant Choice Hotels International, Inc's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). *B.T. v. G6 Hosp., LLC*, 2025 WL 2781131, at *1 (S.D. Ohio Sept. 30, 2025) (Marbley, J.) (ECF No. 44).

On December 12, 2025, the G6 Defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or, alternatively, for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (ECF No. 49). Plaintiff opposed, (ECF No. 54), and Defendants replied, (ECF No. 55). On September 4, 2026, the G6 Defendants provided notices of supplemental authority. (ECF Nos. 82; 83). Plaintiff responded and provided her own supplemental authority. (ECF Nos. 84; 85).

## II. STANDARD OF REVIEW

### A. Judgment on the Pleadings

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed—but early enough not delay trial." Fed. R. Civ. P. 12(c). It attacks the sufficiency of the pleadings and is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F. 3d 509, 511–12 (6th Cir. 2001). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal quotation marks omitted). A district court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Interlocutory Appeal

A district court may certify a question "not otherwise appealable" on interlocutory appeal where: (1) the "order involves a controlling question of law"; (2) " there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Where the statutory criteria are met, the district court retains "broad discretion to deny certification." *In re Transdigm Grp., Inc. Sec. Litig.*, 2018 WL 11227556, at *1 (N.D. Ohio Jan. 30, 2018); *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995).

## III. LAW & ANALYSIS

As a threshold matter, this Court addresses the notices of supplemental authority submitted by both parties. (ECF Nos. 82; 83; 84; 85). In each of these notices, the parties advance at least some argument.

Under the local rules of this Court, no additional memoranda beyond the brief in support of the motion, the opposition, and the reply are permitted "except upon leave of the court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Neither side has sought nor obtained leave of this Court to advance additional *argument* regarding their positions, and a notice of supplemental authority is not a vehicle for additional briefing beyond the memoranda permitted by S.D. Ohio Civ. R. 7.2(a). Accordingly, these notices are **STRICKEN** as filed contrary to the local rules.

## A. Judgment on the Pleadings

### *1. Trafficking Victims Protection Reauthorization Act*

The TVPRA establishes criminal liability for sex trafficking:

> Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

The TVPRA also creates a civil cause of action:

> An individual who is a victim of a violation of [§ 1591] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person know or should have known has engaged in an act in violation

> of [§ 1591]) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

### *2. Participation in a Venture*

First, the G6 Defendants argue that this Court should revisit its standard set forth in *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 968–70 (S.D. Ohio 2019) (Marbley, J.), for determining whether a plaintiff has alleged participation in a venture to satisfy the elements of a § 1595(a) action. (ECF Nos. 49 at 5–11; 55 at 1, 3–9). Plaintiffs oppose. (ECF No. 54 at 7–15). This Court sees no reason to depart from its interpretation of the TVPRA's participation in a venture element, and therefore declines the request.

The TVPRA does not define "participation in a venture." Without a definition in the statute, "participation in a venture" should be understood according to its plain meaning. *See Food Mktg. Inst. v. ArgusLeader Media*, 588 U.S. 427, 433–34 (2019) (looking to "[c]ontemporary dictionaries" to discern the meaning of statutory terms). "Participation" is simply "[t]he act of taking part in something, such as a partnership, a crime, or a trial." Participation, Black's Law Dictionary 1347 (11th ed. 2019); *accord* Participation, American Heritage Dictionary 1285 (5th ed. 2018) ("The act of taking part or sharing in something."). A "venture," meanwhile, is "[a]n undertaking that involves risk; [especially] a speculative commercial enterprise." Venture, Black's Law Dictionary 1870 (11th ed. 2019); *accord* Venture, American Heritage Dictionary 1922 (5th ed. 2018) (". . . A business enterprise involving some risk in expectation of gain. . . .").

In *M.A.*, this Court determined that "'participation under § 1595 does not require actual knowledge of participation in the sex trafficking itself," and to meet a venture, "[i]n the absence of a direct association, [a plaintiff] must allege at least a showing of a continuous business relationship between the trafficker and the hotel[] such that it would appear that the trafficker and

the hotel[] have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970. This statutory construction must be "liberally construed" as part of the TVPRA's remedial scheme. *M.A.*, 425 F. Supp. 3d at 969 (citing *Peyton v. Rowe*, 391 U.S. 54, 65 (1968)); *accord, e.g.*, *Rojas v. First Pick Farms LLC*, 822 F. Supp. 3d 819, 844 (W.D. Mich. 2026) (citing *M.A.* and *Peyton*).

Defendants make much of circuit precedent that they argue necessitate this Court revisit its prior decisions. This Court has already considered similar arguments, largely based on Eleventh Circuit precedent, and explained its reading of the statute. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 2696500, at *13–18 (S.D. Ohio Sept. 22, 2025) (Marbley, J.) (addressing, *inter alia*, *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021); *Doe v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024)); *B.D.G. v. Choice Hotels Int'l, Inc.*, 2023 WL 5935646, at *4–5 (S.D. Ohio Sept. 12, 2023) (Marbley, J.) (addressing *Does 1–6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022)). It adopts its prior reasoning on these issues in full. *E.g.*, *M.A.*, 2025 WL 2696500, at *13–18.

The D.C. Circuit's decision in *Apple* is readily distinguishable because it dealt with an "agreement . . . to buy and sell cobalt" between American technology companies and mining operations in the Democratic Republic of the Congo. 96 F.4th at 405, 416. The D.C. Circuit reasoned that "purchasing a commodity, without more, is not 'participation in a venture' with the seller," noting that the plaintiffs "ha[d] not alleged a factual basis to infer a common purpose, shared profits and risk, or control as in *Ricchio*, nor do they allege the Tech Companies and the cobalt suppliers had the type of direct and continuous relationship that existed between the parties in *Salesforce*." *Id.* at 416. In short, there was no alleged proximity between the parties. *See id.* at 415; *see also M.A.*, 2025 WL 2696500, at *15 n.20.

The factual backdrop is markedly different here, where the G6 Defendants allegedly maintained both the literal and metaphorical roof over a trafficking venture in their hotel, right down the hall from their staff. Consider B.T.'s allegations that her traffickers "were very violent with her," "loud sounds of abuse and B.T.'s screams for help could often be heard from the room," and that staff would witness her escorting "johns" for a period of three months. (¶¶ 72–76).

The decisions of the Ninth and Eleventh Circuits are also distinguishable. In *Reddit*, the Ninth Circuit was dealing with TVPRA claims where internet company Reddit had immunity under 47 U.S.C. § 230(e)(5)(A). *See* 51 F.4th at 1141–43. And the Eleventh Circuit in *Doe* was analyzing claims that the defendants "participated in a *sex-trafficking* venture"—not a commercial venture. *L.M.H. v. Red Roof Inns, Inc.*, 2025 WL 961720, at *13 (S.D. Ohio Mar. 31, 2025) (Marbley, J.); *see B.D.G.*, 2023 WL 5935646, at *4–5; *Doe*, 21 F.4th at 727 (plaintiffs alleged "sex trafficking ventures," not "commercial ventures").

Under this Court's precedent, "'[p]articipation' simply means 'taking part.'" *M.A.*, 2025 WL 2696500, at *18. To show a "venture," a plaintiff could "adduce evidence of 'a continuous business relationship' between the trafficking venture and the hotel 'such that it would appear that the trafficker and the hotel[] have established a pattern of conduct or could be said to have a tacit agreement." *Id.* at *14 (quoting *M.A.*, 425 F. Supp. 3d at 970). Plaintiff's allegations here pass muster.

Consistent with this Court's prior holdings, Plaintiff has alleged sufficient facts to demonstrate participation in a venture under the TVPRA. The venture at issue for civil liability need not be the sex trafficking venture itself—it can be a continuous business relationship. *See G.M. v. Choice Hotels Int'l, Inc.*, 2024 WL 1347722, at *5 (S.D. Ohio Mar. 29, 2024) (Marbley, J.) (citing *M.A.*, 425 F. Supp. 3d at 970); *see also, e.g.*, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544,

554 (7th Cir. 2023) (the venture can be a "'*commercial* venture[]' like running or expanding a business") (quoting *Doe*, 21 F.4th at 727). And participation, by its plain terms, "does not . . . require more than 'assisting, supporting, or facilitating' a venture." *G.G.*, 76 F.4th at 558–59; *see Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (Souter, J., by designation) (claim is sufficiently stated for participation in a venture where alleged trafficker "had prior commercial dealings with" the hotel owners and the "circumstances" of his "coercive and abusive treatment of [the plaintiff] as a sex slave had become apparent").

The G6 Defendants' continued control over the premises and their ongoing rental of hotel rooms to B.T. and her trafficker distinguish this case from cases like *Apple*, which dealt with commodities traded at distance on global markets. Here, by contrast, the G6 Defendants control the very premises where the trafficking is alleged to have occurred. B.T.'s trafficking supposedly occurred before the very eyes and ears of hotel staff—who allegedly cleaned up condoms, provided fresh linens, and continued to rent to B.T. despite screams, sounds of abuse, and the fact that she was a *fourteen-year-old child* walking around their hotel with many different men who were "significantly older than her." (¶¶ 50, 73).

#### *3. Knew or Should Have Known*

Next, the G6 Defendants argue that Plaintiff has not plausibly alleged they had actual or constructive knowledge of her trafficking. (ECF Nos. 49 at 12–13; 55 at 9–10). Plaintiff does not specifically address these arguments, though she notes from the outset that this Court has already denied Defendant Choice Hotels International, Inc.'s motion to dismiss on the same factual allegations. (ECF No. 54 at 1).

The TVPRA requires that a defendant "knew or should have known" that the venture it participated in was engaged in sex trafficking. 18 U.S.C. § 1595(a). Actual knowledge is not

required for liability to attach, as the language of the statute demonstrates that constructive knowledge is sufficient. *B.T.*, 2025 WL 2781131, at *9 (citing *M.A.*, 425 F. Supp. 3d at 970).

The G6 Defendants first argue that Plaintiff must plead that they knew their venture trafficked her. (ECF No. 49 at 1). Not so. As this Court has often explained, defendants "need not have actual knowledge of the violation—constructive knowledge is sufficient." *In re Hotel TVPRA Litig.*, 2026 WL 2920380, at *14 (S.D. Ohio Sept. 29, 2026) (Marbley, J.) (citing *G.M. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 776, 779–80 (S.D. Ohio 2024) (Marbley, J.)). Notice of "'the prevalence of sex trafficking generally at [the subject] hotel[ ],' the failure 'to take adequate steps to train staff in order to prevent its occurrence,' and signs that 'should have alerted staff to [a plaintiff's] situation' are sufficient to meet the constructive knowledge requirement." *G.M.*, 725 F. Supp. 3d at 780 (quoting *M.A.*, 425 F. Supp. 3d at 968). B.T.'s allegations, including her allegations of observable "red flags" harvesting of Wi-Fi data evidencing sex trafficking suffice to meet this standard. (¶¶ 74, 77, 103, 105–07, 141–42, 147). This Court has previously concluded that these types of allegations should have alerted staff to her trafficking. It certainly suffices to allege constructive knowledge. *E.g.*, *G.M.*, 725 F. Supp. 3d at 780.

To the extent that the G6 Defendants accuse Plaintiff (or Plaintiff's counsel) of making "cookie-cutter" or "boilerplate" allegations that lack any factual development, (ECF No. 49 at 13), that argument finds little traction in this case. It is hard to see why the red flags of human trafficking would change markedly from hotel to hotel or victim to victim. In particular, the G6 Defendants provide no reason to think that the class of hotels across these related cases would provide wildly different sets of services to their guests, or that the trafficking and exploitation of women, men, and children for commercial sex has notable variations impacting claims stated for

relief. Moreover, B.T. raises distinct and different allegations against the G6 Defendants and Choice in this very action. (*See* ¶¶ 64, 72).

Last, the G6 Defendants attempt to muddy B.T.'s allegations and suggest that they could also support voluntary prostitution. (ECF No. 49 at 13–14). This argument is also unavailing. The G6 Defendants fail to address B.T.'s allegations of screams and sounds of abuse and waive away her allegations that she was fourteen years old. Contrary to their assertions that B.T. did not allege facts showing that they should have known she was a minor, B.T. alleges *she was fourteen years old and walking around the property with different men* who looked "significantly older" than her, "hundreds of times throughout the night and day." (¶¶ 50, 73).

Taken together, B.T.'s allegations suffice under the plausibility standard, and certainly meet the requirements of pleading constructive knowledge.

#### ***4. Perpetrator Liability***

The G6 Defendants also argue that the Amended Complaint cannot sustain a claim under a perpetrator theory of liability. (ECF No. 49 at 14–15).

Under the TVPRA, 18 U.S.C. § 1591(a)(1) "imposes criminal sanctions on whoever knowingly recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person with knowledge or reckless disregard of the fact that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act." *Doe v. Best W. Int'l, Inc.*, 2024 WL 3759761, at *6 (S.D. Ohio Aug. 12, 2024) (Marbley, J.) (citations and internal quotation marks omitted). To satisfy § 1591(a)(1) in this context, Plaintiff must allege that the G6 Defendants "knowingly harbored or maintained" her "with knowledge or reckless disregard of the fact that fraud or force would be used to cause her to engage in a commercial sex act." *Id.* (cleaned up).

To allege a violation of 18 U.S.C. § 1591(a)(2), Plaintiff must allege that the G6 Defendants "benefit[ ], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)," and that they also knowingly or recklessly disregarded the fact that threats of force or coercion would be used to cause her to engage in a commercial sex act. *Doe*, 2024 WL 3759761, at *6. To allege "participation in a venture" under *this* statutory provision, Plaintiff must allege the G6 Defendants were "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4). To be liable under 18 U.S.C. § 1591(a)(2), a defendant must be aware of the venture's "true ends" and commit an "overt act" in furtherance "of the sex trafficking aspect of the venture." *Id.* (citing *M.A.*, 425 F. Supp. 3d at 969–70).

The G6 Defendants advance three arguments, the first two of which are largely predicated on their earlier beneficiary theory of liability arguments. *First*, they argue that Plaintiff has not established the requisite knowledge to state a perpetrator liability claim, which is higher than the knowledge requirement for a beneficiary liability claim. Since the G6 Defendants take the position that Plaintiff did not satisfy that lower standard earlier, they contend it follows that she cannot satisfy the higher standard now. *Second*, they make an analogous argument regarding the participation-in-a-venture requirement, contending that they cannot be a direct participator if they were not an indirect participator. (ECF No. 49 at 14).

In response, Plaintiff largely rests on this Court's prior decision denying Defendant Choice Hotels International, Inc.'s sought dismissal of the same perpetrator liability claim brought against it. (ECF No. 54 at 15–16). Both parties recognize that the allegations against Choice were distinct; the G6 Defendants suggest that they were materially different in that Choice was alleged to have received payments to "keep quiet." (ECF No. 49 at 15). Plaintiff points out that she did not allege

this against Choice. (ECF No. 54 at 15). The confusion likely stems from this Court's imprecision in concluding that Plaintiff had sufficiently alleged that Choice had knowingly harbored or maintained her by continuing to rent rooms to her trafficker. In reaching that conclusion, this Court directly quoted *Doe*, where the hotel defendant in question was "accepting payments *to keep quiet* and allow the trafficking [to] continue." *B.T.*, 2025 WL 2781131, at *6 (quoting *Doe*, 2024 WL 3759761, at *6) (emphasis added). In reply, the G6 Defendants seem only to confuse the issue further, construing this Court's opinion direct-quoting another decision in a sex-trafficking case as containing Plaintiff's operative allegations—rather than engaging with the Amended Complaint. (ECF No. 55 at 11).

At any rate, the G6 Defendants' arguments on these points are, at best, perfunctory. *See McPherson v. Kelsey*, 125 F.3d 989, 995 –95 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Plaintiff has alleged that the G6 Defendants rented a hotel room to her trafficker for three months while she appeared much younger than the many different men she was seen on the hotel property with, had visible signs of physical abuse, and was staying in a room where screams and sounds of abuse could be heard, among many other red flags. (¶¶ 71–76). This Court does not see a basis for sustaining the G6 Defendants' challenge to the knowledge or venture participation elements of a perpetrator liability claim when their arguments are perfunctory and are largely premised on the assumption that the beneficiary liability claim would also fail, and appear to rest on a misreading of Plaintiff's Amended Complaint and this Court's prior decision.

*Third*, the G6 Defendants instead devote most of their attention to their final argument, challenging whether Plaintiff has sufficiently alleged that they "harbored" her within the meaning of 18 U.S.C. § 1591(a). They argue that hotels do not criminally harbor their guests by renting the

guest a room. (ECF No. 49 at 14–15). Plaintiff provides a lengthy response in opposition, asking this Court to stand by its precedent. (ECF No. 54 at 17–23).

This Court has previously considered and rejected similar arguments raised by other hotel defendants on this same point. It adopts its prior reasoning, and holds that "[c]onstruing the allegations in Plaintiff's favor at this stage, . . . she sufficiently alleges that [the hotel] Defendants knowingly 'harbored' her in violation of § 1591(a)(1) by renting rooms to her traffickers for the purpose of causing Plaintiff, a minor, to engage in commercial sex acts." *L.M.H.*, 2025 WL 961720, at *10; *accord Doe*, 2024 WL 3759761, at *6; *B.T.*, 2025 WL 2781131, at *6. This conclusion adheres to the plain language of the statute. 18 U.S.C. § 1591(a)(1); *see* Harboring, Black's Law Dictionary 860 (11th ed. 2019) ("The act of affording lodging, shelter, or refuge to a person, [especially] a criminal or illegal alien."). The G6 Defendants' arguments here fail.

#### *5. Vicarious Liability and CAVRA*

Finally, the G6 Defendants argue that Plaintiff's vicarious liability and CAVRA claims necessarily fail because her underlying substantive claims fail. (*See* ECF No. 49 at 15). Because Plaintiff's underlying substantive claims do not fail, these perfunctory challenges fail.

### B. Interlocutory Appeal

Separately, the G6 Defendants request this Court to certify this Order as eligible for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). This Court has repeatedly explained that "interlocutory appeals are generally disfavored and are reserved for 'exceptional cases.'" *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 805 (S.D. Ohio 2024) (Marbley, J.) (citing *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002)). As "[a]ttractive as it may be to refer difficult matters to a higher court for advance decision, such a course of action is contrary to our system of jurisprudence." *U.S. ex rel. Elliott v. Brickman Group Ltd., LLC*, 845 F. Supp. 2d 858,

863 (S.D. Ohio 2012) (Barrett, J.) (quoting *Alexander v. Provident Life & Accident Ins. Co.*, 663 F. Supp. 2d 627, 639 (E.D. Tenn. 2009)). The Sixth Circuit has long held that the legislative history of 28 U.S.C. § 1292(b) makes it "quite apparent" that the statute should be "sparingly applied," as it is "not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Kraus v. Bd. of Cnty. Road Comm'rs*, 364 F. 2d 919, 922 (6th Cir. 1966). Thus, a party seeking certification "has the burden of showing exceptional circumstances exist warranting an interlocutory appeal." *Alexander*, 663 F. Supp. 2d at 639.

The G6 Defendants specifically ask this Court to certify "[w]hether a hotel's repeated rental of rooms to a trafficker, when it knew or should have known of the trafficking, amounts to participation in a venture." (ECF No. 49 at 16). They argue that this is a controlling question of law; that there are substantial grounds for difference of opinion on this question in light of variations in caselaw, particularly with the Eleventh Circuit; and that a decision on this issue would materially advance the litigation because it would necessarily result in termination of the case under Plaintiff's theory of room-rental venture participation. (*Id.* at 16–20; *accord* ECF No. 55 at 13–16). Plaintiffs oppose, pointing out that courts, including this Court, "routinely deny motions to certify for interlocutory review denials of motions to dismiss for a purported failure to state a claim under the TVPRA and CAVRA." (ECF No. 54 at 25–26).

As this Court and others have explained, "Congress passed 28 U.S.C. § 1292(b) primarily to ensure that the courts of appeals would be able to rule on ephemeral questions of law that might disappear in the light of a complete and final record." *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (cleaned up); *see A.M.*, 728 F. Supp. 3d at 806 (citing *Weber*). That purpose would not be served by the interlocutory appeal certification that the G6 Defendants request. The nature of the alleged venture between Plaintiff's trafficker and the G6 Defendants necessarily involves a

fact-intensive inquiry. "To certify the issues for interlocutory appeal now would create delay and expense, in addition to divesting the Sixth Circuit of the opportunity to consider them in light of the richer factual and legal history that would be created by allowing the issues to proceed through the normal channels of appeal." *A.M.*, 728 F. Supp. 3d at 806 (citation and internal quotation marks omitted). This Court is not persuaded by the G6 Defendants' perfunctory arguments that, at this stage, this litigation could be materially advanced by an interlocutory appeal. *See* 28 U.S.C. § 1292(b); (*see also* ECF Nos. 49 at 16; 55 at 13–14).

This Court rejects the G6 Defendants' request to certify the issues for appeal.

## IV. CONCLUSION

For the foregoing reasons, the G6 Defendants' Motion for Judgment on the Pleadings (ECF No. 49) is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 30, 2026**